[Civ. No. 6516.   Third Dist.—April 19, 1941.]

WILLIAM S. RAY et al., Plaintiffs and Appellants, v. MERCANTILE ACCEPTANCE CORPORATION OF CALIFORNIA (a Corporation), Defendant and Appellant.

Taft & Spurr for Plaintiffs and Appellants.

Preston & Gibson for Defendant and Appellant.

THE COURT.—This is an action for a conversion of a V–8 Tractor, a utility semi-trailer, and a GMC truck, based upon the unlawful re-possession thereof by defendant finance company.

Some time prior to July 1, 1937, plaintiffs were purchasing, under conditional contracts, the tractor and the GMC truck. On May 11, 1937, plaintiffs, being the owners of the utility trailer, executed a chattel mortgage thereon in favor of the Acceptance Corporation, as security for the payment of $504, re-payable in twelve monthly installments of $42, beginning June 15, 1937.

On June 24th, plaintiffs paid defendant Acceptance Corporation $200, of which $42 was credited on the chattel mortgage payment due June 15th, and the balance was applied to other obligations from plaintiffs to defendant.

Some time in July, the exact date being one of the issues in this case, defendant re-possessed all three pieces of equipment on the ground plaintiffs were in default or had violated the terms of their contracts.

Plaintiffs then brought this action in conversion, claiming defendant had acted unlawfully in such seizures, and after a hearing thereon, judgment was entered in favor of defendant as to the tractor and the truck, the court finding that as to that equipment plaintiffs were in default under their contracts, but as to the utility trailer the judgment was in favor of plaintiffs.

Each side has appealed from that portion of the judgment adverse to them, defendant claiming it took possession of the trailer under the terms of the chattel mortgage, and plaintiffs as to the tractor and truck, contending that the vendor of a conditional sales contract, after default in a monthly installment, cannot accept a partial payment and then claim a forfeiture prior to the due date of the next monthly installment.

Directing our attention first to the appeal of the Acceptance Corporation as to the utility trailer, the record discloses the execution of the chattel mortgage and the payment of the June installment on June 24th.

According to the testimony of defendant the trailer was re-possessed in Petaluma, some time after July 15th, either July 17th or July 19th. The entry on the books of the company shows a re-possession entry as of July 19th, so it may be assumed the actual retaking was at a time prior thereto.

Elgin Ray, one of the plaintiffs, testified he took the trailer to the Sanderson Garage for some repair work on June 28, 1937. At a time subsequent thereto he called at the garage to get the trailer, but he was refused possession, Sanderson telling him the Acceptance Corporation had an attachment against it. Ray fixes the time as July 6th. Defendant contends the testimony of Ray as to this date is too uncertain upon which to base a finding, but in answer to the question—"When did you go back after the . . . utility trailer"—Ray answered, "On the 6th day of July 1937". He also testified a man named Monte Reid took the trailer from the Sanderson Garage "just about July 12th". Ray also called the Acceptance Corporation in San Francisco from Petaluma

by telephone, the date not being specified, although it may be inferred that he called at the time possession was refused by the garage keeper, the testimony being that he went to get the equipment but was told the corporation had an attachment on it, that he saw no papers, and he was asked, "Was any of the representatives of the Mercantile Acceptance Corporation there at that time that you know of?", and he answered—"Well, I called them up in San Francisco, the San Francisco office", and he was refused permission to remove the trailer from the garage.

The time of this attempted removal of the equipment from the Sanderson Garage is fixed by the witness as July 6, 1937, and he recalls that date as being after the Fourth of July holiday, and after his uncle's funeral, which was prior to July 4th. He also went to Petaluma before he went to Eureka, and the testimony is he went to Eureka about the 10th day of July. Such testimony would seem sufficiently definite upon which the court could base a finding, and is ample to establish the fact that the utility trailer was repossessed, or at least a conversion took place some time prior to July 15th, which was the date the installment of interest became due.

■ It is true that plaintiff made no physical effort to take the trailer from the garage, but in view of the fact the garage keeper refused him possession, which refusal was affirmed in a telephonic conversation with defendant in San Francisco, it is sufficient, under the circumstances, to excuse plaintiff from attempting by force to recover physical possession of his property.

■ It is pointed out by defendant that the chattel mortgage was executed in the county of Mendocino, and that the plaintiffs, mortgagors, resided in that county, and that the mortgage specifically provided that the mortgaged property should not be removed from the county in which the mortgage was executed, and for that reason defendant justified its seizure of the trailer.

The court has impliedly found against this contention of defendant. Plaintiff testified he took the trailer to the garage at Petaluma to have some work done on it. We may assume, in the absence of evidence to the contrary, plaintiff took the trailer from Mendocino County to the adjoining county of Sonoma for the sole purpose of having certain repair work

done thereon, and the trial court not having ordered a forfeiture of the trailer for that reason, this court will not now declare such forfeiture upon the facts before us.

As to the appeal by plaintiffs from that portion of the judgment in favor of defendant as to the tractor and GMC we find no error by the trial court.

The GMC was sold to plaintiffs under a conditional sales contract dated May 11, 1937, whereby plaintiff agreed to pay a balance due at the rate of $150 per month for seven months. This equipment had previously been sold to one Carter under a contract, and under that contract Carter was in arrear $250, which plaintiffs paid about June 2, 1937. The tractor was purchased on December 24, 1936, upon payments of $64.62 payable monthly. The full installment payments on the GMC and the tractor were not made, and the records of payments actually received support the statement of the court that "the evidence justifies the conclusion that on April 24, 1937, an installment on the Ford tractor became due, and that this installment was paid on June 28, 1937; that at the time of repossession, the installments which became due on May 24, 1937 and on June 24, 1937, remained unpaid; . . . that on the GMC truck and trailer an installment of $150.00 matured on June 2, 1937 on account of which $92.78 was paid on June 28, 1937. Another installment matured on July 2, 1937 and this was not paid. It seems clear that as to the Ford tractor and the GMC truck, plaintiffs were in default at the time of the repossession, unless such default had been waived. Time here being of the essence of the agreement, there was no such waiver. *Stoody Co.* v. *Valley Pipe and Welding Co.*, 20 Cal. App. (2d) 580 [67 Pac. (2d) 747]; *Pacific Finance & Inv. Co.* v. *Pierce*, 48 Cal. App. 600 [191 Pac. 1115]; *Liver* v. *Mills*, 155 Cal. 459, at page 462 [101 Pac. 299]."

The judgment is affirmed. Each side to bear their own costs.